## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRISTOL-MYERS SQUIBB CO., E. R. SQUIBB & SONS L.L.C., ONO PHARMACEUTICAL CO., LTD., and TASUKU HONJO, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) C.A. No. 17-cv-1029-GMS |
| EMD SERONO, INC., MERCK KGaA, and , PFIZER INC., | ) ) ) ) |
| Defendants. | ) |
| PFIZER INC., WYETH LLC, GENETICS INSTITUTE, LLC, EMD SERONO, INC., and MERCK KGaA, | ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | ) ) |
| BRISTOL-MYERS SQUIBB CO., E. R. SQUIBB & SONS L.L.C., ONO PHARMACEUTICAL CO., LTD., and TASUKU HONJO, | ) ) ) ) ) |
| Counterclaim Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PARTIALLY DISMISS COUNTERCLAIM PLAINTIFFS' LICENSE COUNTERCLAIM VIII FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION................................................................................................................1 | |
| II. | STATEMENT OF FACTS..................................................................................................2 | |
| III. | LEGAL STANDARDS........................................................................................................4 | |
| IV. | PFIZER CANNOT SHOW THE PRESENCE OF A CASE OR CONTROVERSY RELATING TO ANY OF THE NON-ASSERTED PATENTS..............................................................................................................................6 | |
| | A. | BMS has Never Threatened to Assert any of the Non-Asserted Patents Against Pfizer.............................................................................................................6 |
| | B. | Four of Five Non-Asserted Patents Relate to Antibody Products Different From Pfizer's Accused Product, BAVENCIO® ....................................................10 |
| V. | CONCLUSION ..................................................................................................................12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
606 F.3d 1338 (Fed. Cir. 2010)..................................................................................................4

*Draeger Med. Sys. v. My Health, Inc.*,
No. 15-cv-248, 2016 U.S. Dist. LEXIS 26724 (D. Del. Mar. 3, 2016) .....................................9

*Edmunds Holding Co. v. Autobytel, Inc.*,
598 F. Supp. 2d 606 (D. Del. 2009).......................................................................................4, 8

*Idenix Pharms., Inc. v. Gilead Scis., Inc.*,
No. 13-cv-1987, 2014 U.S. Dist. LEXIS 118789 (D. Del. Aug. 25, 2014)...................7, 10, 12

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
599 F.3d 1377 (Fed. Cir. 2010)..............................................................................................8, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)....................................................................................................................4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................................................................................................................5

*Ontel Prods. Corp. v. Yeti Coolers, LLC*,
No. 16-cv-5712, 2017 U.S. Dist. LEXIS 110508 (D.N.J. June 30, 2017)..................................7

*Pa. Family Inst., Inc. v. Black*,
489 F.3d 156 (3d Cir. 2007).......................................................................................................4

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)...............................................................................................6, 7

*Quantum Loyalty Sys. v. TPG Rewards Inc.*,
No. 09-cv-22, 2012 U.S. Dist. LEXIS 48045 (D. Del. Apr. 4, 2012).........................................7

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007)...................................................................................................5

*Tabletop Media, LLC v. AMI Entm't Network, LLC*,
No. 16-cv-1121, 2017 U.S. Dist. LEXIS 166766 (D. Del. Oct. 10, 2017) ................................9

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007)..............................................................................................5, 6

*Verance Corp. v. Digimarc Corp. (Del.)*,
    No. 10-cv-831, 2011 U.S. Dist. LEXIS 58788 (D. Del. June 2, 2011) .................................4, 5

*W.L. Gore & Assocs. v. AGA Med. Corp.*,
    No. 11-cv-539, 2012 U.S. Dist. LEXIS 36640 (D. Del. Mar. 19, 2012) ...................................7

**Statutes**

28 U.S.C. § 2201(a) .................................................................................................................5

Pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiffs/Counterclaim Defendants (collectively "BMS"), submit this memorandum of law in support of their motion to partially dismiss the license counterclaim (Counterclaim VIII) of Counterclaim Plaintiffs (collectively "Pfizer").

## I. INTRODUCTION

Pfizer's license counterclaim seeks to have this Court resolve purported defenses to patent infringement claims that have never been asserted—or even threatened—by BMS. Even accepting the threadbare jurisdictional allegations in Pfizer's counterclaim as true, there is simply no evidence of a real and immediate dispute necessary to establish declaratory judgment jurisdiction. With no case or controversy in play, this Court lacks subject matter jurisdiction over the full scope of the counterclaim and it should be dismissed in part.

Pfizer makes and sells a cancer treatment drug comprised of an antibody that binds to a protein in the body called PD-L1—i.e., Pfizer's drug includes an "anti-PD-L1 antibody." BMS's complaint here is limited to a claim of patent infringement under a single United States patent that covers methods of cancer treatment using an anti-PD-L1 antibody. In its response to BMS's complaint, however, Pfizer seeks to assert a counterclaim alleging a license to practice not only the asserted patent, but *__five additional patents__*. Four of those five patents cover methods of cancer treatment using a *different* type of antibody that binds to a *different* protein referred to as PD-1—i.e., the patents are directed to use of an "anti-PD-1 antibody," not an anti-PD-L1 antibody like Pfizer's accused product. Unsurprisingly, Pfizer does not contend that BMS has ever threatened assertion of these patents against it. The fifth patent that Pfizer seeks to interject into this case covers specific methods of treatment using a PD-L1 antibody, but Pfizer's drug is not approved for those methods and, in any event, Pfizer nowhere contends that BMS has ever threatened it with assertion of this patent either.

To the extent Pfizer's license counterclaim (Counterclaim VIII) relates to these five non-asserted patents, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because there is no present case or controversy concerning these patents.[1]

## II.  STATEMENT OF FACTS

BMS filed the present action against Pfizer on July 26, 2017.  (D.I. 1).  In its complaint, BMS alleges that Pfizer infringes claims of a *single* United States patent, namely, U.S. Patent No. 9,402,899 ("the '899 Patent").  (*Id*. at ¶¶ 55-59).  The '899 Patent is generally directed to methods of treating cancer in a human patient by administering an anti-PD-L1 antibody.  (Hartman Decl. Ex. 3, '899 Patent at 25:22-28).  BMS alleges that Pfizer infringes claims of the '899 Patent by marketing, making, using, selling, offering for sale, and/or importing its anti-PD-L1 antibody avelumab, which is sold under the brand name BAVENCIO®, in the United States for the treatment of cancer.[2]

Pfizer answered the complaint on October 4, 2017.  (D.I. 8).  With its answer, Pfizer set forth counterclaims which contend, among other things, that Pfizer has a license to practice the

---

[1] BMS is not moving at this time to dismiss Pfizer's counterclaims which seek correction of inventorship, and resulting ownership, for the five non-asserted patents, at issue in the present motion.  (D.I. 8, Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial, Counterclaims Counts I through V and VII).  Identical correction of inventorship claims are currently pending before the District of Massachusetts in an action brought by Dana-Farber Cancer Institute, Inc. ("the Massachusetts Action").  (*See* Declaration of Matthew Hartman ("Hartman Decl.") Ex. 1, D.I. 1, Complaint, *Dana-Farber Cancer Institute, Inc. v. Ono Pharm. Co., Ltd.*, No. 1:15-cv-13443 (D. Mass.); Hartman Decl. Ex. 2, D.I. 98, Amended Complaint, *Dana-Farber Cancer Institute, Inc. v. Ono Pharm. Co., Ltd.*, No. 1:15-cv-13443 (D. Mass.)).  For the reasons set forth in its opposition to the Defendants' motion to stay being filed today, BMS contends that Pfizer's correction of inventorship counterclaims, as well as the related ownership counterclaim, should be stayed while those same issues are resolved in the Massachusetts Action.

[2] BMS alleges that Pfizer infringes claims of the '899 Patent, including by actively inducing infringement under 35 U.S.C. § 271(b) and as a contributory infringer under 35 U.S.C. § 271(c).  (D.I. 1 at ¶¶ 55-59).

2

'899 Patent.[3]  (*Id*. at ¶¶ 110-116 at p. 39-40 (counterclaim VIII)).  More specifically, counterclaim VIII alleges that Pfizer has a royalty-free, worldwide, non-exclusive license to practice the '899 Patent pursuant to research agreements entered into between Genetics Institute, Ono Pharmaceutical Co., Ltd., and Dr. Tasuku Honjo.  (*Id.* at ¶ 112 at p. 39).

But counterclaim VIII is not limited to the '899 Patent.  Rather, Pfizer seeks a declaratory judgement that, in addition to the '899 Patent, it has a license to practice ***five additional patents*** owned by BMS that are not asserted in this lawsuit, namely U.S. Patent No. 7,595,048 ("the '048 Patent"), U.S. Patent No. 8,168,179 ("the '179 Patent"), U.S. Patent No. 8,728,474 ("the '474 Patent"), U.S. Patent No. 9,067,999 ("the '999 Patent") and U.S. Patent No. 9,073,994 ("the '994 Patent") (collectively, "the Non-Asserted Patents").[4]  (D.I. 8 at § 52 at p. 30, *id*. at ¶¶ 110-116 at p. 39-40).

Four of the five Non-Asserted Patents (the '048, '474, '999, and '994 Patents) are not directed to anti-PD-L1 antibodies.  Instead, these four patents cover methods of using a different type of antibody—an anti-PD-1 antibody—that binds to a protein called "PD-1."  Make no mistake about it, an anti-PD-1 antibody is *not* the same as an anti-PD-L1 antibody.  In fact, Pfizer admits that anti-PD-1 antibodies are not covered by the '899 Patent that has been asserted against Pfizer's anti-PD-L1 antibody product in this case.  (*See* D.I. 8 at ¶ 6 at p. 4 ("Defendants admit that [BMS's product] OPDIVO® (nivolumab) is an anti-PD-1 antibody according to its FDA-approved prescribing information, and thus is expressly not covered by the '899 patent.")).

---

[3] BMS denies that Pfizer has a license to practice any of the patents listed in its counterclaims.

[4] Pfizer's counterclaim does not distinguish between the asserted '899 Patent and the five Non-Asserted Patents.  Rather Pfizer's counterclaim refers to the asserted and Non-Asserted Patents collectively as the "Disputed Patents."

The fifth Non-Asserted Patent, the '179 Patent, is directed to anti-PD-L1 antibodies, but for use in methods of treating a PD-L1-expressing tumor in combination with one or more specifically-identified chemotherapy drugs. (Hartman Decl. Ex. 4, '179 Patent at 25:13-26:3). Pfizer's product has never been approved for treatment in combination with any chemotherapy drugs. (See Hartman Decl. Ex. 5, BAVENCIO® Approved Label).

There is no evidence (and, indeed, Pfizer's counterclaims nowhere allege) that BMS has ever asserted or threatened to assert against Pfizer any of the Non-Asserted Patents that Pfizer seeks to introduce into this case via its license counterclaim.

### III.   LEGAL STANDARDS

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010).[5] "[N]o amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Id.* A federal court is presumed to lack jurisdiction in a particular case unless the contrary is affirmatively shown. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 164 (3d Cir. 2007). Fed. R. Civ. P. 12(b)(1) "authorizes dismissal of a complaint for lack of jurisdiction over the subject matter." *Edmunds Holding Co. v. Autobytel, Inc.*, 598 F. Supp. 2d 606, 608 (D. Del. 2009). A motion pursuant to Fed. R. Civ. P. 12(b)(1) may either make a facial or factual challenge to the court's subject matter jurisdiction. *Id.* When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the

---

[5] The question of whether to dismiss for lack of subject matter jurisdiction is governed by Federal Circuit law. *See Verance Corp. v. Digimarc Corp. (Del.)*, No. 10-cv-831, 2011 U.S. Dist. LEXIS 58788, at *7 (D. Del. June 2, 2011) (citing *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991)).

4

district court must weigh the evidence and the plaintiff [or claimant] has the burden of proving that the court has jurisdiction over the subject matter. *Verance Corp.*, 2011 U.S. Dist. LEXIS 58788, at *6.

In declaratory judgment actions, the declaratory judgment plaintiff must show that "a case of actual controversy" exists to establish subject matter jurisdiction sufficient to maintain an action in federal court. 28 U.S.C. § 2201(a). Although there is no bright line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not, courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and must further be "real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citation and quotation marks omitted; alteration in original); *see also Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007) ("[W]e follow *MedImmune's* teaching to look at 'all the circumstances' . . . to determine whether Teva has a justiciable Article III controversy."); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguable illegal behavior or abandoning that which he claims a right to do.").

The Federal Circuit views the "immediacy and reality" requirement "through the lens of standing." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008). To have standing to bring or maintain a claim, a plaintiff must demonstrate an injury in fact—a harm that is: "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). There must be a causal connection between the injury and the defendant's conduct. *Id.* The injury cannot be speculative, and must be redressable by a decision in the plaintiff's favor. *Id.* at 561. A controversy must also be ripe for judicial review, which is determined by whether the defendant's actions "have harmed, are harming, or about to harm the plaintiff." *Teva*, 482 F.3d at 1337. A controversy is ripe if "postponing a decision would work a substantial hardship on the challenging party." *Id.* Courts may only decide actual ripe controversies and cannot "'give opinions upon moot questions or abstract propositions.'" *Id*. at 1338 (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960)).

## IV. PFIZER CANNOT SHOW THE PRESENCE OF A CASE OR CONTROVERSY RELATING TO ANY OF THE NON-ASSERTED PATENTS

The Court should dismiss Pfizer's counterclaim VIII under Fed. R. Civ. P. 12(b)(1), to the extent it relates to the Non-Asserted Patents, because the Court lacks subject matter jurisdiction over the full scope of the counterclaim.

### A. BMS has Never Threatened to Assert any of the Non-Asserted Patents Against Pfizer

BMS has never accused Pfizer of infringing any claims of the Non-Asserted Patents. Rather, in the present suit, BMS only alleges that Pfizer infringes claims of one patent, the '899 Patent, based on its activities related to its anti-PD-L1 antibody, BAVENCIO®. (D.I. 1 at ¶¶ 55-

59). With no threat of infringement—and, indeed, not even an allegation from Pfizer of any such threat—this alone is sufficient to establish a lack of controversy as to the Non-Asserted Patents and provide the basis for granting BMS's motion.

In the patent context, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Prasco*, 537 F.3d at 1339 (internal citation and quotation marks omitted). Courts in this Circuit routinely dismiss claims, like Pfizer's counterclaim here, that seek to bring in patents that have never been asserted, or even threatened to be asserted, by a patentee. *See Idenix Pharms., Inc. v. Gilead Scis., Inc.*, No. 13-cv-1987, 2014 U.S. Dist. LEXIS 118789, at *6-17 (D. Del. Aug. 25, 2014) (dismissing counterclaims related to non-asserted patents where plaintiffs had never threatened defendants with litigation, despite the fact that the parties had been engaged in litigation around the globe regarding the general subject matter of the patents); *Quantum Loyalty Sys. v. TPG Rewards Inc.*, No. 09-cv-22, 2012 U.S. Dist. LEXIS 48045, at *2-3 (D. Del. Apr. 4, 2012) (finding no declaratory judgment jurisdiction as to "two related patents with the same specification" on which the patent holder had not sued); *W.L. Gore & Assocs. v. AGA Med. Corp.*, No. 11-cv-539, 2012 U.S. Dist. LEXIS 36640, at *17-18 (D. Del. Mar. 19, 2012) (finding no declaratory judgment jurisdiction over claims to an unasserted and never threatened patent that merely "'relates to similar technology'" as a patent currently in litigation between the parties) (citation omitted); *Ontel Prods. Corp. v. Yeti Coolers, LLC*, No. 16-cv-5712, 2017 U.S. Dist. LEXIS 110508, at *10-16 (D.N.J. June 30, 2017) (finding no case or controversy based on plaintiff's prior aggressive litigation behavior against competitors in the same market and a third party's statement that defendant would sue plaintiff, where there were no pre-suit communications from

7

the defendant threatening to assert its intellectual property rights against plaintiff); *Edmunds Holding Co.*, 598 F. Supp. 2d at 610 (finding no jurisdiction based on suits against other companies and defendant's stated general intent to enforce its patents).

      The Federal Circuit's decision in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010)—finding *no* jurisdiction under facts much closer to a purported "controversy" than anything in the present case—is instructive. The plaintiff in *Innovative Therapies* sought a judicial declaration in the U.S. District Court for the District of Delaware that five patents, which had not been asserted by the defendant, were invalid and/or not infringed by the plaintiff's medical device. The court dismissed the declaratory judgment action, finding that "the mere existence of an adversely held patent" is insufficient to create an actual controversy. *Id.* at 1379. On appeal, the plaintiff argued there was a controversy of "sufficient immediacy and reality" to warrant jurisdiction based on: (1) representations made by the plaintiff to the FDA which would have indicated to the defendant that plaintiff's product infringes its patents, *id.* at 1379-80; (2) comments made by the defendant's employees to the plaintiff during informal phone conversations which suggested that the defendant would assert its patents if the plaintiff launched its product, *id.* at 1380-81; and (3) defendant's past history of enforcing the patents against others, *id.* at 1381-82. In affirming the district court's dismissal for lack of jurisdiction, the Federal Circuit emphasized that, despite the defendant's enforcement history, no accusation of infringement or threat of suit had been made. *Id.* at 1382. The Federal Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction. *Id.* at 1385.

      Like the claims that were dismissed in *Innovative Therapies*, Pfizer's license counterclaim (counterclaim VIII) includes patents that BMS has never asserted—or even threatened to assert—against Pfizer. There is also no allegation by Pfizer that BMS has ever

8

suggested during communications with Pfizer that it would enforce the Non-Asserted Patents against Pfizer.  In fact, Pfizer does not even allege that there have been *any* communications between BMS and Pfizer regarding the Non-Asserted Patents.  Instead, Pfizer asserts a conclusory allegation that "[a]n actual case or controversy exists between [BMS] and [Pfizer] concerning whether [Pfizer] [has] a royalty-free worldwide, non-exclusive license to practice the Disputed Patents…" without identifying any basis for why a case or controversy exists for the Non-Asserted Patents.  (D.I. 8 at ¶ 114 at p. 40).  Quite simply, the allegations of a purported case or controversy here are even more scant than in *Innovative Therapies*, as well as the list of cases from this District cited above, where subject matter jurisdiction was found to be lacking.

By comparison, in other declaratory judgment cases where courts have found subject matter jurisdiction there has generally been at least some direct contact between the parties suggesting they had adverse legal interests related to a specific patent prior to the filing of a lawsuit.  *See, e.g.*, *Tabletop Media, LLC v. AMI Entm't Network, LLC*, No. 16-cv-1121, 2017 U.S. Dist. LEXIS 166766, at *11-12 (D. Del. Oct. 10, 2017) (finding the existence of case or controversy over a specific patent based on the fact that the plaintiff affirmatively contacted the defendant asserting its rights related to that patent, and when the defendant disagreed, plaintiff continued to claim that its patent was relevant to the defendant's product); *Draeger Med. Sys. v. My Health, Inc.*, No. 15-cv-248, 2016 U.S. Dist. LEXIS 26724, at *5-6  (D. Del. Mar. 3, 2016) (finding jurisdiction where defendant sent plaintiff a thorough infringement analysis prepared by its "legal team," including claim charts, and stated that plaintiff requires a license to continue selling its product).  No such contact is present here.  BMS has not acted overtly and specifically toward Pfizer in a way that would create an actual controversy as to the Non-Asserted Patents.

It is Pfizer's burden to prove that the Court has subject matter jurisdiction over its counterclaim.  *See Idenix Pharms.*, 2014 U.S. Dist. LEXIS 118789, at *17 ("It is Defendants' burden to convince the Court why, though they have never been threatened with litigation over these two patents, circumstances suggest an imminent and real threat in the future.").  Pfizer states in counterclaim VIII that "[a]n actual case or controversy exists . . . concerning whether [Pfizer] ha[s] a royalty-free, worldwide, non-exclusive license to practice the Disputed Patents." (D.I. 8 at ¶ 114 at p. 40).  But what is notably missing is any explanation regarding how or why there is an actual or imminent case or controversy over the Non-Asserted Patents, especially in view of the fact that BMS has not asserted those patents, or even *accused* Pfizer of infringing them.  Pfizer's bare allegations are wholly insufficient to satisfy its burden.  Because any alleged controversy over the Non-Asserted Patents is purely hypothetical, there can be no actual case or controversy.  Pfizer's declaratory judgment license counterclaim, to the extent it relates to the Non-Asserted Patents, should be dismissed.

### B. Four of Five Non-Asserted Patents Relate to Antibody Products Different From Pfizer's Accused Product, BAVENCIO®

Further highlighting the lack of case or controversy is the fact that four of the five Non-Asserted Patents—namely, the '048, '474,'999, and '994 Patents (collectively, "the PD-1 Patents")—relate to methods of treating cancer using antibodies *different from* Pfizer's accused anti-PD-L1 antibody product, BAVENCIO®.  Thus, to the extent Pfizer attempts to argue that BMS's infringement claim for the '899 Patent somehow supports a case or controversy related to the PD-1 Patents, that argument should be rejected.

As the claim language of the PD-1 Patents demonstrates, they simply do not cover the use of anti-PD-L1 antibodies.  For example, representative claim 1 of the '474 Patent states:

> A method for treatment of a tumor in a patient, comprising administering to the patient a pharmaceutically effective amount of an ***anti-PD-1 monoclonal antibody***.

(Hartman Decl. Ex. 6, '474 Patent at 25:13-15 (emphasis added)). Similarly, claim 1 of the '048 Patent, which is representative, states:

> A method for treatment of cancer, wherein a pharmaceutically effective amount of completely human ***anti-PD-1 antibody*** is parenterally administered to a subject with cancer in which PD-L1 or PD-L2 is over-expressed, postoperatively.

(Hartman Decl. Ex. 7, '048 Patent at 25:6-9 (emphasis added)). There is a reason why BMS has not asserted the PD-1 Patents against Pfizer in the present action. They simply do not cover use of Pfizer's BAVENCIO® because BAVENCIO® is an antibody directed against PD-**L**1 rather than PD-1.[6]

Pfizer admits that PD-1 and PD-L1 are completely different molecules. For example, Pfizer explains in its counterclaims that PD-1 and PD-L1 are found on different cell types. (D.I. 8 at ¶ 2-4 at p. 18-19). Pfizer further describes that PD-L1 is a specific binding partner for PD-1 and that by blocking the interaction between PD-1 and PD-L1, the immune system can raise a more powerful response against the cancer cells. But this can be done using antibodies that block *either* PD-1 or PD-L1. (*Id*. at ¶ 6 at p. 20). Antibodies are specific for their target and, therefore, an antibody that binds to PD-L1 will not also interact with PD-1, and vice versa.

This dissimilarity between the methods of using anti-PD-L1 antibodies in the asserted '899 Patent and the methods of the PD-1 Patents also weighs against a finding of a case or controversy. In fact, courts have dismissed counterclaims for lack of subject matter jurisdiction

---

[6] The other Non-Asserted Patent, the '179 Patent, is directed to a method of treating a PD-L1-expressing tumor by administering an anti-PD-L1 antibody in combination with one or more chemotherapy drugs. (Hartman Decl. Ex. 4 at 25:13-26:3). Pfizer's current BAVENCIO® label does not state that the product has been approved for combination use with chemotherapy drugs. (Hartman Decl. Ex. 5, BAVENCIO® Approved Label).

11

because it was difficult to predict the threat of litigation based on differences between asserted and non-asserted patents. For example, in *Idenix Pharms.,* the court held that defendants failed to meet their burden of showing an actual controversy as to two non-asserted patents that were "different in ways that make it hard to tell, simply by reading them, whether a claim of infringement as to the [asserted patents] might inexorably suggest that a claim of infringement as to the [non-asserted] patents is close at hand." 2014 U.S. Dist. LEXIS 118789, at *13. Because the court could not determine whether the differences were of a kind that still created a real and immediate threat of future suit as to the non-asserted patents, it dismissed the claims for lack of jurisdiction over their subject matter. *Id.* at *14-15. But unlike the non-asserted patents in *Idenix Pharms.,* it *is* possible to tell, simply by reading the claims of the PD-1 Patents, that they cover a different type of invention—methods of using an anti-PD-1 antibody rather than an anti-PD-L1 antibody—than the invention claimed in the asserted '899 Patent.

Pfizer's purported license defense to the PD-1 Patents simply has no place in this case. Pfizer's accused product, BAVENCIO® is not an anti-PD-1 antibody and, as such, is not relevant to the PD-1 Patents. In fact, BMS is unaware of Pfizer ever receiving FDA approval—or even seeking FDA approval—to market and/or sell an anti-PD-1 antibody. For these additional reasons, there is no case or controversy concerning the PD-1 Patents and Pfizer's license counterclaim as to these patents should be dismissed.

## V.     CONCLUSION

Pfizer's declaratory judgment counterclaim VIII should be dismissed for lack of subject matter jurisdiction to the extent it relates to the Non-Asserted Patents (i.e., the '048, '179, '474, '999, and '994 Patents). The primary reason is straightforward and well-supported in the law: the Non-Asserted Patents have never been asserted, or even threatened to be asserted, against

Pfizer or its BAVENCIO® product. In addition, the four PD-1 Patents do not involve methods of using anti-PD-L1 antibodies, like BAVENCIO®. Thus, with no evidence of a real and immediate dispute necessary to establish declaratory judgment jurisdiction, the motion to dismiss should be granted.

Dated: November 1, 2017

*Of Counsel:*

Dianne Elderkin
Steven D. Maslowski
Matthew A. Pearson (#4902)
Angela Verrecchio
Melissa Gibson
Jason Weil
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Tel.: (215) 965-1200
Fax: (215) 965-1210
delderkin@akingump.com
smaslowski@akingump.com
mpearson@akingump.com
averrecchio@akingump.com
mgibson@akingump.com
jweil@akingump.com

Rachel J. Elsby
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Ave., N.W.
Washington, DC 20036
Tel: (202) 887-4000
Fax: (202) 887-4288
relsby@akingump.com

Respectfully Submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs and Counterclaim Defendants Bristol-Myers Squibb Co., E. R. Squibb & Sons L.L.C., Ono Pharmaceutical Co., Ltd., and Tasuku Honjo*